| | |
|---|---|
| 1 | Kit James Gardner (161736) |
| 2 | **LAW OFFICES OF KIT J. GARDNER**<br>501 West Broadway, Suite 800 |
| 3 | San Diego, CA 92101<br>Telephone: (619) 525-9900 |
| 4 | Facsimile: (619) 374-2241<br>Email: kgardner@gardnerlegal.com |
| 5 | Proposed General Counsel for |
| 6 | Debtor-in-Possession Lignus, Inc. |

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | CASE NO. 17-05475-CL11 |
| LIGNUS, INC., | CHAPTER 11 |
| Debtor. | ***FIRST DAY*** **EMERGENCY MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOSE GAITAN** |

Debtor-in-Possession Lignus, Inc. ("Lignus" or "Debtor") hereby moves *ex parte* for an emergency "First Day" Order as follows:

(1) Authorizing the use of cash collateral to pay operational expenses of the Debtor's business.

(2) Granting the following secured creditor (hereafter referred to as the "Secured Creditor") a valid, perfected, continuing replacement lien in an amount equal to its allowed claim: DirectCapital, Inc.

(3) Scheduling a final hearing with respect to the Motion and continuing the Interim Order in effect until such time as a final order may be entered, all as set forth in the proposed Interim Order attached hereto as Exhibit "A".

1

1   The Motion is and will be made pursuant to section 363 of the United States Bankruptcy
2   Code, 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 4001, Local Rule Appendix D1,
3   and is and will be based on the Memorandum of Points and Authorities and Declaration of Jose
4   Gaitan set forth herein, and any papers and pleadings on file with the Court, and any other
5   evidence that may be presented.

6                                         LAW OFFICES OF KIT J. GARDNER

7   Dated: 9/8/2017                   By: /s/ Kit J. Gardner           .
8                                            Kit J. Gardner
9                                            Proposed General Bankruptcy Counsel to Debtor-in-Possession Lignus, Inc.

10  **MEMORANDUM OF POINTS AND AUTHORITIES**

11   Lignus has been a successful and profitable wholesaler of lumber and related hardware
12  accessories for approximately 13 years.  In 2015, Lignus expanded and scaled-up its operations
13  by employing more personnel and renting a warehouse space with approximately 19,000 square
14  feet.  Rent for that warehouse was $13,500.00 per month in 2017.  The increased costs of
15  operation were not offset by significantly greater revenues, so Lignus began experiencing fiscal
16  constraints and an inability to timely pay its creditors, primarily consisting of trade vendors
17  supplying goods on credit.
18   Lignus' management has already begun measures to rescale its operations by, for
19  example, negotiating an exit from its existing warehouse lease.  Lignus intends to gradually
20  return to its initial business model, which was based on a smaller center of operations and direct
21  shipping of goods from its suppliers to its customers (also known as "drop shipping"), thereby
22  reducing reliance on warehousing and staffing.
23   In order to obtain a reprieve from threatened creditor actions and increased pressure
24  against it, and with the intention of repaying all of its debt in an orderly and planned fashion,
25  Lignus has filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States
26  Code (the "Bankruptcy Code").  In Chapter 11, Lignus intends to remain in business, continue its
27  day-to-day normal operations (albeit on a downsized basis), and restructure its debts pursuant
28

to a Plan of Reorganization. Lignus expects its Plan of Reorganization to propose payment in full to all creditors with allowed claims.

The terms of Lignus' financing agreement with the Secured Creditor grants it a lien in Lignus' deposits, accounts receivable, and other collateral considered to be "cash collateral" pursuant to Section 363(a) of the United States Bankruptcy Code (the "Bankruptcy Code"). The Secured Creditor is owed approximately $2,449.29. This amount is relatively *de minimis* especially given that the Debtor has approximately $67,000.00 on hand in its bank account as of the date of this Motion. Furthermore, as an ongoing business, the Debtor will be receiving post-petition payments from customers, and the Debtor's Motion proposes to provide a replacement lien to the Secured Creditor in the Debtor's cash collateral. Consequently, the Secured Creditor's claim will be adequately protected, and the Court should authorize the Debtor to continue using the cash collateral.

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363 (c)(1) provides in relevant part:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of the estate, in the ordinary course of business, without notice or a hearing, and may sue property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

A debtor in possession has all of the rights and powers of a trustee with respect to the property of the estate, including the right to use property of the estate in compliance with Section 363. 11 U.S.C. §1107(a).

Section 363 defines "cash collateral" as, *inter alia*, "proceeds, products, offspring, rents, or profits of property . . . subject to a security interest . . . ." 11 U.S.C. § 363(a). The trustee or debtor in possession may use the "cash collateral" pursuant to section 363(c)(1) of the Bankruptcy Code if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease . . . ." 11 U.S.C. § 363(c)(2). Upon the request of an entity that has an interest in the property proposed to be used

1 | by the Debtor, the Court shall prohibit or condition such use "as is necessary to provide
2 | adequate protection of such interest."  11 U.S.C. § 363(e).
3 |     It is well-settled that it is appropriate for a Chapter 11 debtor to use cash collateral for a
4 | reasonable period of time for the purpose of maintaining and operating its property.  11 U.S.C. §
5 | 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); In re Center
6 | Wholesale, Inc., 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain
7 | circumstances the entire reorganization effort may be thwarted if emergency relief is withheld'
8 | and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than
9 | at the outset of the proceedings when the debtor is often without sufficient cash flow to fund
10 | essential business operations.' ... It is for this very reason that Congress specified that
11 | hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs
12 | of the debtor.' ").  Moreover, "a debtor, attempting to reorganize a business under Chapter 11,
13 | clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the
14 | availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the
15 | congressional policy favoring rehabilitation over economic failure would be frustrated."  In re
16 | Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993).
17 |     A debtor may be authorized to use a secured creditor's cash collateral if the secured
18 | creditor is adequately protected.  11 U.S.C. § 363(e).  The property interest that a debtor must
19 | adequately protect is only the value of the lien that secures the creditor's claim.  United States
20 | Association v. Timbers of Inwood Forest Associates, 484 U.S. 365 (1988).  Here, the Secured
21 | Creditor will be adequately protected by the replacement lien.  11 U.S.C. § 361(2) (stating that
22 | adequate protection may be provided by "an additional or replacement lien . . . .").  The
23 | preservation of a secured creditor's lien is sufficient to provide adequate protection to a secured
24 | creditor when a debtor seeks to use cash collateral.  In re Triplett, 87 B.R. 25, 26 (Bankr.
25 | W.D.Tex. 1988).
26 |     Here, the Secured Creditor is adequately protected, since the Debtor proposes to
27 | provide it with a replacement lien in the Debtor's cash collateral, and the Secured Creditor's
28 | claim is in itself relatively small.  In particular, the Secured Creditor is owed only approximately

$2,449.29. Presently, the Debtor has approximately $67,000.00 on hand in its bank account, and is furthermore expected to continue receiving payments from customers post-petition for goods that it shipped pre-petition and will ship in the future. The Debtor proposes providing a replacement lien to the Secured Creditor, so it will be adequately protected.

No trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the Office of the United States Trustee and other parties in interest or their counsel, including the twenty largest unsecured creditors and the secured creditor by the method indicated on the accompanying declaration of service.

WHEREFORE, the Debtor respectfully requests that the Court enter an emergency order as follows:

1. Authorizing the use of cash collateral on an interim basis to pay operational expenses of the Debtor incurred in the ordinary course of the Debtor's business.

2. Granting DirectCapital, Inc. a perfected, continuing replacement lien in an amount equal to its allowed claim.

3. Scheduling a final hearing with respect to the Debtor's Motion and continuing the Interim Order in effect until such time as a final order may be entered.

LAW OFFICES OF KIT J. GARDNER

Dated:  9/8/2017            By: /s/ Kit J. Gardner            .
                                Kit J. Gardner
                                Proposed General Bankruptcy Counsel to Debtor-in-Possession Lignus, Inc.

**DECLARATION OF JOSÉ GAITAN**

I, José Gaitan, declare as follows:

1. I am over the age of eighteen, and am the Chief Financial Officer of Lignus, Inc., the Debtor-in-Possession in the above-captioned case ("Lignus" or the "Debtor"). I have personal knowledge of the facts set forth in this Declaration, except those facts stated on information and belief, which I believe to be true. If called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2. Lignus has been a successful and profitable wholesaler of lumber and related accessories for approximately 13 years. In 2015, Lignus expanded and scaled-up its operations by employing more personnel and renting a warehouse space with approximately 19,000 square feet. Rent for that warehouse was $13,500.00 per month in 2017. The increased costs of operation were not offset by significantly greater revenues, so Lignus began experiencing fiscal constraints and an inability to timely pay its creditors, primarily consisting of trade vendors supplying goods on credit.

3. Lignus' management has already begun measures to rescale its operations by, for example, negotiating an exit from its existing warehouse lease. Lignus intends to gradually return to its initial business model, which was based on a smaller center of operations and direct shipping of goods from its suppliers to its customers (also known as "drop shipping"), thereby reducing reliance on warehousing and staffing.

4. In order to obtain a reprieve from threatened creditor actions and increased pressure against it, and with the intention of repaying all of its debt in an orderly and planned fashion, Lignus has or will file a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). In Chapter 11, Lignus intends to remain in business, continue its day-to-day normal operations (albeit on a downsized basis), and restructure its debts pursuant to a Plan of Reorganization. Lignus expects its Plan of Reorganization to propose payment in full to all creditors with allowed claims.

///

5. The terms of Lignus' financing agreement with DirectCapital, Inc. ("Secured Creditor") grants it a lien in Lignus' deposits, accounts receivable, and other collateral considered to be "cash collateral". Secured Creditor is owed only approximately $2,449.29 as of the date of this declaration.  Presently, the Debtor has approximately $67,000.00 on hand in its bank account, and is furthermore expected to continue receiving payments from customers post-petition for goods that it shipped pre-petition and will ship in the future.  The Debtor proposes providing a replacement lien to the Secured Creditor, so its interest will be adequately protected.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on the date set forth below at San Diego, California.

Dated: 9/8/2017        /s/ José Gaitan        .
               JOSÉ GAITAN

# EXHIBIT "A"

CSD 1001A [11/15/04]

Name, Address, Telephone No. & I.D. No.

Kit James Gardner (161736)
LAW OFFICES OF KIT J. GARDNER
501 West Broadway, Suite 800
San Diego, CA  92101-7994
Telephone:  (619) 525-9900
Facsimile: (619) 374-2241

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

LIGNUS, INC.

Debtor.

BANKRUPTCY NO. 15-05475-CL11

Date of Hearing: N/A
Time of Hearing: N/A
Name of Judge: Hon. Christopher B. Latham

# ORDER ON
# FIRST DAY EMERGENCY MOTION FOR ENTRY OF INTERIM ORDER
# AUTHORIZING USE OF CASH COLLATERAL

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2) through __2__ with exhibits, if any, for a total of __2__ pages, is granted.  Motion/Application Docket Entry No. _____

//
//
//
//
//
//

DATED: _____

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

LAW OFFICES OF KIT J. GARDNER
(Firm name)

By: /s/ Kit J. Gardner
Attorney for ☑ Movant ☐ Respondent

CSD 1001A

```
CSD 1001A [11/15/04](Page 2)
ORDER ON  FIRST DAY EMERGENCY MOTION FOR ENTRY OF INTERIM ORDER
DEBTOR: LIGNUS, INC.                                    CASE NO: 15-05475-CL11
```

Having reviewed the First Day Emergency Motion by the Debtor, Lignus, Inc. (the "Debtor") for an Interim Order Authorizing the Use of Cash Collateral (the "Emergency Motion"), service appearing proper and good cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.  The Debtor's Emergency Motion is granted, and this Order shall remain in full force and effect on an interim basis until such time as a final hearing can be held concerning the matters set forth in the Emergency Motion, and a final Order is entered thereon.

2.  The Debtor is authorized to use cash collateral (as that term is defined in Section 363(a) of the United States Bankruptcy Code, 11 U.S.C. § 363(a)) (hereafter referred to as the "Cash Collateral") to pay U.S. Trustee quarterly fees and other expenses arising out of the operation of the Debtor's business in the ordinary course.

3.  DirectCapital, Inc. ("Secured Creditor") is hereby granted a replacement lien in and to the Cash Collateral in an amount equal to its allowed claim (the "Replacement Lien").

4.  The Replacement Lien provided to the Secured Creditor pursuant to this Order shall be a valid, continuing, and perfected lien without the need for any execution, filing or recordation of any mortgage, deed or trust, security agreement, pledge agreement, or financing statement of any kind; provided, however, that nothing herein shall validate a lien that was otherwise invalid as of the date that the Debtor filed its bankruptcy petition, and nothing in this Order shall preclude the Debtor or any other party in interest from objecting to the amount, extent, and/or priority of the original lien rights asserted by or on behalf of Secured Creditor.

5.  To the extent that the Replacement Lien provided to Secured Creditor pursuant to this Order does not provide DirectCapital with adequate protection of their interest in the Cash Collateral, Secured Creditor shall have a "super-priority" administrative expense claim pursuant to 11 U.S.C. §507(b) to the full extent necessary to compensate it fully for the Debtor's use of Cash Collateral.

6.  Secured Creditor's rights and priority granted herein shall not take priority over the payment of bankruptcy fees due and payable under 28 U.S.C. §1930.

7.  Nothing in this Order will be deemed or construed as an admission or waiver by the Secured Creditor regarding the Debtor's use of Cash Collateral.  In addition, nothing contained in this Order shall prejudice the rights of the Secured Creditor to seek any other or further relief that the Secured Creditor may deem necessary and appropriate under the circumstances including, but not limited to, the right to seek immediate termination of the Debtor's use of Cash Collateral upon application to the Court and notice of same to the Debtor and other parties in interest.

8. A final hearing on the Debtor's Motion is set for _____, at _____ in Department ___, Room ____ of the above-captioned Court.  Any opposition to the Debtor's Motion shall be filed with the Court and served on the Debtor's counsel in a manner so as to be received no later than _____.  Debtor's counsel shall provide notice of the entry of this Order in conformity with Appendix D1 of the Local Rules of the United States Bankruptcy Court for the Southern District of California.

IT IS SO ORDERED.

```
CSD 1001A
```