Kit James Gardner (161736)
**LAW OFFICES OF KIT J. GARDNER**
501 West Broadway, Suite 800
San Diego, CA  92101
Telephone: (619) 525-9900
Facsimile:   (619) 374-2241
Email: kgardner@gardnerlegal.com

Proposed General Counsel for
Debtor-in-Possession Lignus, Inc.

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>LIGNUS, INC.,<br><br>                    Debtor. | CASE NO. 17-05475-CL11<br><br>CHAPTER 11<br><br>***FIRST DAY*** **EMERGENCY MOTION FOR INTERIM ORDER AUTHORIZING PAYMENT OF INSIDER COMPENSATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JOSE GAITAN** |

Debtor-in-Possession Lignus, Inc. ("Lignus" or "Debtor") hereby moves *ex parte* for an emergency "First Day" interim Order authorizing it to pay the compensation of insiders for a period not to exceed 60 days at the rates and at the times set forth hereinbelow.  Before the expiration of any Order authorizing their compensation pursuant to this First Day Motion, the Debtor will file a Motion to be heard on regular notice as provided in the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of California.

The Motion is and will be made pursuant to section 105 of the United States Bankruptcy Code, 11 U.S.C. § 105 and Local Rule Appendix D1, and is and will be based on the

1

1  Memorandum of Points and Authorities and Declaration of Jose Gaitan set forth herein, and any
2  papers and pleadings on file with the Court, and any other evidence that may be presented.
3
4                                          LAW OFFICES OF KIT J. GARDNER
5  Dated:  9/8/2017                        By:  Kit J. Gardner                              .
                                                Kit J. Gardner
6                                               Proposed General Bankruptcy Counsel to Debtor-
                                                in-Possession Lignus, Inc.
7

8                     **MEMORANDUM OF POINTS AND AUTHORITIES**

9       Lignus has been a successful and profitable wholesaler of lumber and related hardware
10 accessories for approximately 13 years.  In 2015, Lignus expanded and scaled-up its operations
11 by employing more personnel and renting a warehouse space with approximately 19,000 square
12 feet.  Rent for that warehouse was $13,500.00 per month in 2017.  The increased costs of
13 operation were not offset by significantly greater revenues, so Lignus began experiencing fiscal
14 constraints and an inability to timely pay its creditors, primarily consisting of trade vendors
15 supplying goods on credit.
16      Lignus' management has already begun measures to rescale its operations by, for
17 example, negotiating an exit from its existing warehouse lease.  Lignus intends to gradually
18 return to its initial business model, which was based on a smaller center of operations and direct
19 shipping of goods from its suppliers to its customers (also known as "drop shipping"), thereby
20 reducing reliance on warehousing and staffing.
21      In order to obtain a reprieve from threatened creditor actions and increased pressure
22 against it, and with the intention of repaying all of its debt in an orderly and planned fashion,
23 Lignus has filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States
24 Code (the "Bankruptcy Code").  In Chapter 11, Lignus intends to remain in business, continue its
25 day-to-day normal operations (albeit on a downsized basis), and restructure its debts pursuant
26 to a Plan of Reorganization.  Lignus expects its Plan of Reorganization to propose payment in
27 full to all creditors with allowed claims.
28

1  Lignus' central management consists of Carmen Hernandez, and her husband, Jose
2  Gaitan. The company also employs their son as an administrator. All three are critical to the
3  ongoing operations of the company, and will be needed in order to successfully accomplish the
4  transition to a downsized business model and implement Lignus' reorganization plan. Lignus
5  proposes to pay them on a post-petition basis as follows:

| Name | Relationship to Debtor | Proposed Compensation | Payable |
|---|---|---|---|
| Carmen Hernandez, CEO | Officer and 35% shareholder | $1,800/week | Weekly |
| Jose Gaitan, CFO | Officer and 35% shareholder | $1,800/week | Weekly |
| Jose Carlos Gaitan | Administrator and 30% shareholder | $634.48/week | Weekly |

10  As Chief Execuitve Officer, Ms. Hernandez leads all the areas of the company. She has
11  10 years of experience in the industry and two years with the company. As Chief Financial
12  Officer, Jose Gaitan coordinates and manages the financial affairs of the company, and its
13  domestic and foreign export sales departments. He has more than 27 years of experience in
14  the industry and 12 years with the company. His son, Jose Carlos Gaitan, leads the purchasing
15  and logistics aspects of the company. He has two years of experience in the field and one year
16  with the company.
17  Lignus proposes compensating each one at the rates set forth above. The wages of
18  Carmen Hernandez have remained the same since March of 2016, and the wages of Jose
19  Gaitan and Jose Carlos have remained the same since January of this year. Their
20  compensation has not increased since those times. The amount proposed to be paid to Ms.
21  Hernandez and Mr. Gaitan, combined, is approximately $15,429.72 per month (on an
22  annualized basis) before taxes. After taxes, the amount is approximately $11,590.14 per month,
23  which is necessary to pay their routine monthly living expenses, as detailed in Exhibit "A"
24  hereto.[1]

---

[1] Although Jose Carlos lives with Ms. Hernandez and Mr. Gaitan in the same residence, only approximately $1,000 of his income can be counted on to be contributed to household expenses since he has a child of his own with attendant costs that are not reflected in the budget attached hereto.

1    The amounts to be paid are typical for the positions held within the industry for the size of the company (in 2016, the company earned approximately $7.5 million in revenue, and approximately $6.8 million in revenue the year before that).  This year, Lignus' revenue through the end of August was approximately $5.7 million.

The services to be rendered by the insiders are essential to Lignus' business and achieving maximum value of the business as a going concern.  They have expertise and intimate knowledge of Lignus' history and business operations, which are critical to the success of this bankruptcy proceeding.  If the Court does not approve reasonable compensation for them, Lignus may be forced to retain new management who would require similar compensation in any event and result in disruption to the reorganization process.  Alternatively, Lignus could be forced to liquidate, which would not be beneficial to creditors as compared to maintaining Lignus as a going concern capable of generating revenue to pay its creditors in full.

At or before the expiration of any Order authorizing them to receive compensation pursuant to this First Day Motion, Lignus will file a Motion to be heard with regular notice as provided in the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of California.

No trustee, examiner or creditor's committee has been appointed in this Chapter 11 case.  Notice of this Motion has been given to the Office of the United States Trustee and other parties in interest or their counsel, including the twenty largest unsecured creditors and the secured creditor by the method indicated on the accompanying declaration of service (filed, but not served).

WHEREFORE, the Debtor respectfully requests that it be authorized to pay compensation to insiders as set forth hereinabove for a period not to exceed 60 days from the petition date.

LAW OFFICES OF KIT J. GARDNER

Dated:  9/8/2017          By:  /s/ Kit J. Gardner                                    .
                               Kit J. Gardner
                               Proposed General Bankruptcy Counsel to Debtor-in-Possession Lignus, Inc.

4

Case 17-05475-CL11    Filed 09/09/17    Entered 09/09/17 12:58:58    Doc 5    Pg. 5 of 9

## **DECLARATION OF JOSÉ GAITAN**

I, José Gaitan, declare as follows:

1. I am over the age of eighteen, and am the Chief Financial Officer of Lignus, Inc., the Debtor-in-Possession in the above-captioned case ("Lignus" or the "Debtor"). I have personal knowledge of the facts set forth in this Declaration, except those facts stated on information and belief, which I believe to be true. If called as a witness in this matter, I could and would testify competently to the facts set forth herein.

2. Lignus has been a successful and profitable wholesaler of lumber and related accessories for approximately 13 years. In 2015, Lignus expanded and scaled-up its operations by employing more personnel and renting a warehouse space with approximately 19,000 square feet. Rent for that warehouse was $13,500.00 per month in 2017. The increased costs of operation were not offset by significantly greater revenues, so Lignus began experiencing fiscal constraints and an inability to timely pay its creditors, primarily consisting of trade vendors supplying goods on credit.

3. Lignus' management has already begun measures to rescale its operations by, for example, negotiating an exit from its existing warehouse lease. Lignus intends to gradually return to its initial business model, which was based on a smaller center of operations and direct shipping of goods from its suppliers to its customers (also known as "drop shipping"), thereby reducing reliance on warehousing and staffing.

4. In order to obtain a reprieve from threatened creditor actions and increased pressure against it, and with the intention of repaying all of its debt in an orderly and planned fashion, Lignus has or will file a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). In Chapter 11, Lignus intends to remain in business, continue its day-to-day normal operations (albeit on a downsized basis), and restructure its debts pursuant to a Plan of Reorganization. Lignus expects its Plan of Reorganization to propose payment in full to all creditors with allowed claims.

5. Lignus' central management consists of my wife, Carmen Hernandez, and me. The company also employs our son as an administrator. All three of us are critical to the

ongoing operations of the company, and will be needed in order to successfully accomplish the transition to a downsized business model and implement Lignus' reorganization plan. Lignus proposes to pay us on a post-petition basis as follows:

| Name | Relationship to Debtor | Proposed Compensation | Payable |
|---|---|---|---|
| Carmen Hernandez, CEO | Officer and 35% shareholder | $1,800/week | Weekly |
| Jose Gaitan, CFO | Officer and 35% shareholder | $1,800/week | Weekly |
| Jose Carlos Gaitan | Administrator and 30% shareholder | $634.48/week | Weekly |

6. As Chief Executive Officer, my wife Carmen leads all the areas of the company. She has 10 years of experience in the industry and two years with the company. As Chief Financial Officer, I coordinate and manage the financial affairs of the company, and its domestic and foreign export sales departments. I have more than 27 years of experience in the industry and 12 years with the company. Jose Carlos Gaitan leads the purchasing and logistics aspects of the company. He has two years of experience in the field and one year with the company.

7. Lignus proposes compensating each one of us at the rates set forth hereinabove. The wages of Carmen Hernandez have remained the same since March of 2016, and the wages of Jose Carlos and I have remained the same since January of this year. Our compensation has not increased since those times. The amount proposed to be paid to my wife and I, combined, is approximately $15,429.72 per month (on an annualized basis) before taxes. After taxes, the amount is approximately $11,590.14, which is necessary to pay our routine monthly living expenses, as detailed in Exhibit "A" hereto.[2]

///

///

///

---

[2] Although Jose Carlos lives with Carmen and me in the same residence, we can only count on a portion of his earnings to be contributed to household expenses (in an amount which we estimate to be approximately $1,000) since he has a child of his own with attendant costs that are not reflected in the budget attached hereto.

8. The amounts to be paid are, in my experience, typical for the positions held within the industry for the size of the company (in 2016, the company earned approximately $7.5 million in revenue, and approximately $6.8 million in revenue the year before that). This year, Lignus' revenue through the end of August was approximately $5.7 million.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on the date set forth below at San Diego, California.

Dated: 9/8/2017                     /s/ José Gaitan                     .
                                    JOSÉ GAITAN

# EXHIBIT "A"

**Monthly Expenses**

| | |
|---|---:|
| Mortgage and property taxes | $4,968.92 |
| Home maintenance, repair & upkeep | $150.00 |
| HOA | $130.00 |
| Homeowners' insurance | $100.00 |
| Electricity, gas | $500.00 |
| Water, sewer, garbage collection | $250.00 |
| Telephone, cable, internet | $280.00 |
| Food and housekeeping supplies | $800.00 |
| Children's education costs (college) | $2,400.00 |
| Clothing, laundry and dry cleaning | $380.00 |
| Personal care products & services | $200.00 |
| Housekeeping & cleaning | $548.00 |
| Medical and dental | $500.00 |
| Transportation | $350.00 |
| Entertainment, newspapers, etc | $400.00 |
| Life insurance | $196.00 |
| Vehicle insurance | $95.00 |
| Car payments | $2,098.18 ** |
| | |
| TOTAL EXPENSES | $14,346.10 |
| | |
| TOTAL INCOME | $12,590.14 |
| | |
| Monthly Net | -$1,755.96 |

**Luxury vehicle lease payments. Insiders are working to return them and replace with two vehicles with est. monthly combined payments of $600